Why don't we move to our next case on the calendar then, which is 20-3069 Staff Management Solutions versus Noor Staffing Group and James Feltman. I understand from Mr. White that counsel for the appellant has advised that he is waiving oral argument,  I assume that we will move directly to the appellees. So we have Mr. Bieber on behalf of Noor Staffing Group who has six minutes and Mr. Marecki on behalf of James Feltman who has four minutes. Do I have that correctly? Yes, your honor. Yes, your honor. Very good. So Mr. Bieber, why don't we hear from you? You have six minutes. Yes, good morning and may it please the court, this is Bruce Bieber on behalf of appellee Noor Staffing Group. By and large, I'm gonna rely on our papers and I think that the mere fact that the appellant chose to waive oral argument is indicative of their belief in their argument and- Presumably that means they went handily, that must be the plot. Well, I kind of looked at it with a different perspective but I guess that everyone can look at things differently. And so again, I'm gonna rely primarily on my papers and I really will open it up very quickly if there's any questions so I don't take too much of this court's time. You claim it's the last of the ninth and that you're ahead, that's your claim. I'm sorry, say that again, your honor. You claim it's the last of the ninth and you're ahead in this case. I hope so but I'm also a Mets fan so I'm a little jaded. But yes, but this is what I believe is a rather simple matter in which we entered into a staffing agreement with staff management to provide labor. Sometimes we provide labor directly, sometimes we work with management services companies like staff management where we provide the labor to them and they bill it out to the customer, to the end client. In this case, it's undisputed that there was approximately $1.3 million that was not paid for by staff management. Staff management contends that it deposited a portion of that money in an account that belonged to the trustee, hence the trustee's involvement. Unrelated to that, and I do mean unrelated to that, North Staffing had a heated dispute with the trustee. It was litigated in an adversary proceeding. That case was settled and a release was issued. The release was issued to the trustee and nobody else. While it had your standard language, directors, officers, employees, and so forth, there was no relation there to staff management. Staff management filed a motion in the bankruptcy court claiming that they're entitled to the benefits of that release and that they meant to be involved, that they should have been parties to that release. There's just no indication whatsoever. They were not a party in the underlying action. They were not mentioned in the underlying action. They had absolutely nothing to do with the underlying action. But somebody can be a third party beneficiary even if they're not mentioned in an underlying action. So I take it your argument is that not only weren't they mentioned, they are not a third party beneficiary of that. Correct, Your Honor. In order to be a third party beneficiary, there has to be an intent on the parties to the contract. The parties to the contract certainly had no intent. It has to be, that intent has to be unambiguous. There was no intent, much less unambiguous intent, for the staff management company to be a third party beneficiary of that release. These were completely separate contracts involving separate dealings. They had nothing to do with each other. They received no, staff management did not pay anything. They did not receive anything. They did not render any services. They did not receive any services in connection with this agreement between North Staffing and the trustee. They had nothing to do with it. So I don't see how they could possibly claim that they were intended third party beneficiary. So the staff management argues that CRD was a co-obligor of the funds sought in the Illinois action. And that therefore the release of CRD ought to extend to staff management. What's your response to that? They were not a co-obligor. They were complete, they had nothing to do with, these were completely different relationships. We had a relationship with the trustee coming out of a, we purchased assets from the trustee. And out of bankruptcy and CRD and the staff management had its own separate relationship. There was no co-obligor relationship. There was no, there was nothing to do with it. Just because you're a contract, you know, then D so to speak in one capacity does not make it for every capacity. Very good. Seeing no further questions from the panel, why don't we move to Mr. Marecki? You're here on behalf of the chapter 11 trustee, Mr. Feltman. Correct, your honor. Great. So thank you, your honors may please the court. This is Patrick Marecki from Toget, Siegel and Siegel on behalf of James Feltman, the chapter 11 trustee. I will be very brief here, your honors as in the bankruptcy court and in the district court because no relief has been sought from the debtor's estates. The trustee takes no position on this appeal. Our only interest here is to preserve the trustee's rights related to the adversary proceeding which was commenced by staff management against the trustee and nor shortly after the bankruptcy court's order denying the settlement enforcement motion was entered. And as a district court judge Ramos found in the underlying opinion, any questions relating to staff management's claims against the trustee are not properly before the court. And so we would just submit that staff management's claims against the trustee are not at issue here. Those are currently, those were briefed on a motion to dismiss in the bankruptcy court. Those were fully argued and then judge Glenn stayed that case pending resolution of the action in Illinois. So with that, unless your honors have any questions we'd see the remainder of our time. Seeing no, seeing no other questions. I wanna thank you both for your argument. Thank you for appearing today. It's very helpful.